UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAYTON JAMES GROTH,

    Plaintiff,

v.

CITY OF BIRMINGHAM, NICHOLAS HILL, SCOTT MCINTYRE, RAYMOND FAES, ANTHONY PAREDES, and NICHOLAS KRUMM,

    Defendants.

_____/

Case No. 2:23-cv-11355
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

**ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
TO QUASH REVISED THIRD-PARTY SUBPOENA (ECF No. 28)
AND
DENY AS MOOT PLAINTIFF'S MOTION TO QUASH THIRD-PARTY
SUBPOENA (ECF No. 25)[1]**

I.     Introduction

This is a civil rights case under 42 U.S.C. § 1983. Plaintiff, Brayton James Groth (Groth), alleges that defendants violated his constitutional rights to be free of excessive force, unlawful arrest, malicious prosecution, and that some defendants

---

[1] Upon review of the motions, the undersigned deemed these matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2). A notice of determination without oral argument was issued on May 18, 2023. (ECF No. 30).

1

failed to intervene to protect his constitutional rights. (ECF No. 1). He also brings various related state-law claims. (*Id.*). His action stems from an incident on July 10, 2021, where City of Birmingham police officers responded to an alleged domestic violence call at Groth's residence, entered his residence without permission or cause, and assaulted and detained Groth unlawfully. (*Id.*, PageID.5-8).

On May 15, 2024, defendants issued a revised third-party subpoena to Groth's telephone service provider, AT&T, to provide "all cell phone records between Katherine Nina Groth [Groth's wife]... and Brayton James Groth... including but not limited to text messages, phone calls, voicemails, and cell site information for the time period of July 10, 2021, to present day." (ECF No. 28-2).[2]

Before the Court are Groth's motions to quash defendants' subpoena to AT&T, (ECF No. 25), and to quash defendants' revised subpoena to AT&T, (ECF No. 28). Both motions have been referred to the undersigned. (ECF Nos. 26, 29). For the reasons that follow, Groth's motion to quash the revised subpoena will be GRANTED IN PART and DENIED IN PART. Defendants may subpoena AT&T for the phone records they seek, but limited to the time from July 10, 2021, to April

---

[2] Defendants initially requested from AT&T "all call detail records including but not limited to text messages, phone calls, voicemails, and cell site locations" from a redacted phone number. (ECF No. 25-2). Defendants issued the revised and more limited subpoena after Groth filed his motion to quash the initial subpoena.

2

12, 2024. Further, Groth's motion to quash the initial subpoena will be DENIED AS MOOT, as defendants no longer seek enforcement of that subpoena.

## II. Parties' Arguments

Groth argues that the phone records requested by defendants are "entirely irrelevant" and bear no relevance to any of Groth's claims, or to defendants' defense of "consent" to enter Groth's residence. (ECF No. 28, PageID.295). He says that the subpoena is nothing more than an attempt to harass and incriminate Groth and his wife, and that defendants already possess Krumm's body cam footage of the incident, which is all of the evidence of consent that they need. (*Id.*, PageID.287, 295). This, according to Groth, makes the subpoena unduly burdensome, and it must therefore be quashed.

Defendants argue that the phone records between Groth and his wife go to a key element of their case. They say that Mrs. Groth's statements made to Krumm and recorded on Krumm's body cam on July 10, 2021, conflict with her deposition testimony on April 12, 2024, regarding whether defendant officers had consent to enter the couple's shared residence. (ECF No. 31, PageID.319-323). Thus, defendants are concerned that between those dates, Groth may have coerced his wife into providing false testimony. (*Id.*). The requested phone records would shed light on whether the two had communicated after the incident but prior to her deposition, and would go to Mrs. Groth's credibility, as she testified that Groth had

3

not called or texted her since the July 10, 2021 incident. (*Id.*, PageID.311 (citing ECF No. 31-6, PageID.395-396)). For these reasons, defendants issued a revised subpoena to AT&T to produce phone records between Groth and his wife from July 10, 2021 to the present day. *See* ECF No. 31-5, Proposed Order.

### III. Standard to Quash Subpoena

Under Federal Rule of Civil Procedure 45(a), "a party may serve a subpoena on a non-party . . . commanding that party to 'attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises' at a specified time and place." *Atlantech, Inc. v. Am. Panel Corp.*, No. 11–50076, 2011 WL 2078222, at *2 (E.D. Mich. May 24, 2011); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection.").

A court *must* quash a subpoena if it (1) fails to give the party a reasonable time to comply or requires compliance beyond the applicable geographic limits, (2) requires the disclosure of either privileged or other protected matter in the absence of an applicable exception or waiver, or (3) would be unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A); *see also Atlantech, Inc.*, at *2. A court *may* quash or modify a subpoena if it requires the disclosure of (1) "a trade secret or other confidential research, development, or commercial information" or (2) "an unretained expert's

4

opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(c)(3)(B); *see also Atlantech, Inc.*, at *2.

"The party seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." *Atlantech, Inc.*, at *2. "[T]he party seeking to quash a third-party subpoena must meet a heavy burden of proof." *Proto Gage, Inc. v. Fed. Ins. Co.*, No. 21-12286, 2022 WL 1598621, at *2 (E.D. Mich. May 19, 2022).

IV. Discussion

In support of his motion, Groth relies on *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018). In that case, the Sixth Circuit outlined how to assess whether a non-party subpoena imposes an undue burden. "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' " *Id.* (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id.* (quoting *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136). Groth says that the lack of

5

relevance and need for the documents weigh in favor of quashing the subpoena.

Defendants rely on *Savoie v. Inland Dredging Co., LLC*, No. CV 20-2294, 2022 WL 1238678, at *1 (E.D. La. Apr. 27, 2022), in which the plaintiff was assisting in the repair of a vessel when he allegedly injured his back. In *Savoie*, inconsistencies between the testimony of the plaintiff and others led the defendants to issue a subpoena to Verizon for the cell phone records of a potential witness, Hamlett. The court found that "the requested records [were] relevant and highly important" because "Hamlett's account of the incident differs from that of [the plaintiff] and both of their stories are inconsistent with the records and testimony of [a third witness]." *Id.* at *2. However, the court also found that the subpoena should be limited in scope from the date of the incident to the date of the request, that redactions should be made, and that redacted copies should be produced to the plaintiff. *Id.*

Here, inconsistencies between Mrs. Groth's statements to Krumm on the day of the incident and during her deposition are apparent on the face of her deposition testimony. Mrs. Groth testified that she did not know why she told Krumm on the day of the incident that Groth threw coffee on her, but that she had actually spilled the coffee on herself. (ECF No. 31-6, PageID.419). She testified that she did not know she was being recorded on the date of the incident, and that she must have been remembering incorrectly because of the circumstances on that day. (*Id.*).

6

Although it may be the case that Groth and his wife did not have contact from the date of the incident to Mrs. Groth's deposition—other than what has been admitted—the requested phone records are relevant and proportional to the needs of the case.

Groth also argues that the requested documents are protected by Michigan's spousal privilege, codified at M.C.L. § 600.2162. However, as defendants note, the privilege does not apply in "a cause of action that grows out of a personal wrong or injury done by one to the other . . ." M.C.L. § 600.2162(d). Further, Groth's counsel did not object when defense counsel asked Mrs. Groth whether she and Groth had communicated since the incident. (ECF No. 31-6, PageID.396). Groth has not adequately explained why, despite these circumstances, the records sought would be protected by spousal privilege. Therefore, the Court finds that the records are not privileged.

Similarly, Groth invokes the Fifth Amendment but does not explain why or how the requested production would violate Groth or his wife's constitutional rights. Both have already testified at depositions, without objection, and it is unclear how their phone records could subsequently deprive them of the right against self-incrimination in a criminal case. Therefore, the records are discoverable and shall be produced.

Notwithstanding the above, and as was the case in *Savoie*, the subpoena

should be modified. The revised subpoena requests cell phone records between Groth and his wife from July 10, 2021, to the present day. (ECF No. 28-2, PageID.299). That goes too far. The timeframe shall be modified and limited to records from July 10, 2021, to April 12, 2024, the date of Mrs. Groth's deposition. Defendants' primary concern is whether Mrs. Groth spoke to and potentially coerced Mrs. Groth to change her story at deposition from what she had told Krumm on the date of the incident. Records post-dating her deposition are not necessary nor relevant to make this showing. Further, if these records are to be used or provided to Groth or his counsel, they shall be marked "Confidential" and treated as such under the protective order entered in this case. *See* ECF No. 17.

V. Conclusion

For the reasons stated above, Groth's motion to quash the revised subpoena, (ECF No. 28), is GRANTED IN PART and DENIED IN PART. Defendants may subpoena AT&T for the phone records they seek, but the record shall be limited to the time from July 10, 2021, to April 12, 2024. Further, Groth's motion to quash the initial subpoena, (ECF No. 25), is DENIED AS MOOT, as defendants no longer seek enforcement of that subpoena.

SO ORDERED.

Dated: June 18, 2024            s/Kimberly G. Altman
Detroit, Michigan           KIMBERLY G. ALTMAN
          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 18, 2024.

                                              s/Carolyn Ciesla
                                              CAROLYN CIESLA
                                              Case Manager